# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANGELIA JAMERSON,

          Plaintiff,

          v.                        Case No. 10-C-164

REGGIE BICHA et al.,

          Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I. FACTS AND PROCEDURAL HISTORY**

Angelia Jamerson's ("Jamerson") strong passion and love for children led her to a career in childcare, which began in 1995 when she opened a certified childcare facility in her home. (Docket No. 56 at ¶¶3-4.) In order to obtain her certification from Milwaukee County, in addition to completing certain training, she was required to undergo a background check. (Docket No. 56 at ¶6.) As part of this background check, Jamerson revealed that she had been convicted of two felonies in 1991 for crimes related to public assistance fraud. (Docket No. 56 at ¶6; see also Docket Nos. 48-3 at 7; 48-8 at 5; 54 at ¶75; 60 at ¶75.) Nonetheless, Jamerson obtained her certification and in 2001 she sought to obtain a state license for her home-based childcare business. (Docket No. 56 at ¶8.) This licensing process again required additional training and another background check. (Docket No. 56 at ¶8.)

In 2008, Jamerson sought to expand her business outside of her home and thus founded Childrens [sic] Fantasy Child Care & Preschool Academy ("Childrens Fantasy"), of which Jamerson was the owner and operator. (Docket No. 56 at ¶¶2, 12.) This new facility required an

additional license and yet another background check. (Docket No. 56 at ¶12.) By 2009, Childrens Fantasy was providing care to more than 50 children and had more than a dozen employees. (Docket No. 56 at ¶13.)

Unfortunately, one of those dozen employees was Jamerson's older sister, Brenda Ashford ("Ashford"). Ashford was also an entrepreneur and she was operating her side business while she was working at Childrens Fantasy. This side business is relevant to the matter presently before this court because rather than selling Amway or Avon, Ashford was selling marijuana. Specifically, on August 6, 2009, while she was working at Childrens Fantasy, (Docket Nos. 52 at ¶15; 52-1 at 2), Ashford walked down to the corner and met a confidential informant and an undercover police officer. (Docket No. 49-7.) The police report obtained by the Department noted that it appeared Brittany Ashford, another employee of Childrens Fantasy who was working at the time, (Docket Nos. 52-1 at 2; 60 at ¶52), and is Brenda Ashford's daughter, was acting as a lookout for her mother during this transaction. (Docket No. 51-1 at 6.) Brittany Ashford was never charged with any crime related to this incident. Brenda Ashford sold the informant and undercover officer a quarter-pound of marijuana for $320.00 and then returned to Childrens Fantasy, which she told the informant she owned. (Docket Nos. 49-7; 51-1 at 7.)

On September 18, 2009, Ashford was charged in Milwaukee County Circuit Court with delivery of less than 200 grams of marijuana, a felony. (Docket No. 49-7.) A summons was issued for Ashford and she made her initial appearance on November 17, 2009. (Docket No. 49-9 at 3-4.) Ashford waived her preliminary hearing and pled not guilty on November 23, 2009. (Docket No. 49-9 at 4.)

On December 8, 2009, an Assistant District Attorney emailed Cinda Stricker ("Stricker"), Regional Licensing Chief in the Bureau of Early Care Regulation for the Southeastern Region for the Wisconsin Department of Children and Families ("Department"), a police report and circuit

2

court docket detailing the charges against Ashford. (Docket No. 49 at ¶¶1-2, 6.) This email led to Stricker consulting with her colleagues and supervisors about Childrens Fantasy's future. (Docket No. 49 at ¶¶8-9.) Stricker began drafting a Notice of Revocation but on the following day, December 11, 2009, a day Stricker was off, Department staff obtained additional information about Childrens Fantasy from a detective investigating Ashford.

The detective reported that the Department should close down Childrens Fantasy because drugs were being sold out of the daycare center. (Docket No. 51 at ¶6.) Given the seriousness of the allegations, the Department decided to issue a Notice of Summary Suspension and Notice of Intent to Initiate Proceedings to Revoke. (Docket No. 52 at ¶11.) These notices were hand-delivered to Jamerson on December 11, 2009. (Docket No. 60 at ¶34.) A Notice of Revocation, as had been initially contemplated, would have allowed Childrens Fantasy to continue to operate through the review process whereas a summary suspension immediately closed the daycare. (Docket No. 52 at ¶11.) Jamerson's license was suspended as of 12:00 A.M. on December 12, 2009 and she could not operate the childcare center until further notice of the Department. (Docket No. 60 at ¶38.)

On December 14, 2009, as part of an ongoing series regarding fraud in the Wisconsin's childcare subsidy program known as Wisconsin Shares, an article appeared in the Milwaukee Journal Sentinel under the headline "Drug Dealers Use Child Care as Front." (Docket No. 55-5.) The article included the details of Ashford's case, her relationship to Childrens Fantasy, and noted that the center collected over half a million dollars from Wisconsin Shares since 2006. (Docket No. 55-5.)

The Secretary of the Department of Children and Families is reported in the article as having stated that she was unaware of the specific drug ties until questioned by the paper on December 11, 2009, the date that the Department issued its summary suspension of Childrens Fantasy's license. (Docket No. 55-5.) Secretary Bicha is also quoted as having stated, "We will not accept providers

who place children in harm's way, and if we find out they have, we will shut them down." (Docket No. 55-5.)

Pursuant to DCF § 251.11(9)(a)5, the Department may summarily suspend a license and close a group child care center when the licensee or a person under the supervision of the licensee has committed an action or has created a condition relating to the operation or maintenance of the child care center that directly threatens the health, safety or welfare of any child under the care of the licensee. (Docket No. 60 at ¶41.) Pursuant to DCF § 251.11(9)(b), the Department, within 72 hours of the effective date of the order, will either permit the reopening of the center or initiate revocation of the license. A preliminary hearing shall be conducted by the Department of Administration's Division of Hearings and Appeals, within 10 working days after the date suspension to determine whether the license shall remain suspended during revocation proceedings. (Docket No. 60 at ¶42.)

A hearing on Jamerson's summary suspension was conducted before an administrative law judge ("ALJ") on December 21, 2009. (Docket No. 60 at ¶54.) Two days later, the ALJ issued a written decision concluding that Childrens Fantasy should remain suspended. (Docket No. 60 at ¶62.) On January 20, 2010, the Department issued a Notice of Revocation of the license for Childrens Fantasy. (Docket No. 60 at ¶68.) In addition to citing violations of Department rules related to Ashford's drug dealing, the Department stated in this notice that effective February 1, 2010, as a result of the passage of 2009 Wisconsin Act 76, Jamerson's prior conviction would bar her from operating a childcare facility. (Docket No. 60 at ¶72.)

Jamerson appealed the notice of revocation, (Docket No. 60 at ¶131), contending, in part, that her prior felony convictions are not included under 2009 Wisconsin Act 76 and thus she is not barred from holding a daycare license. (Docket No. 60 at ¶¶72-73.) Before the hearing, the Department brought a motion to dismiss on the basis that 2009 Wisconsin Act 76 barred Jamerson

from holding a license. (Docket No. 60 at ¶132). The ALJ agreed with the department and Jamerson's appeal was dismissed prior to an evidentiary hearing. (Docket No. 60 at ¶133.) Jamerson appealed this dismissal and that matter is currently pending in Milwaukee County Circuit Court. (Docket No. 60 at ¶¶ 73, 133.)

Initially proceeding pro se, Jamerson initiated this case on February 26, 2010. (Docket No. 1.) Upon the consent of all parties, this case was reassigned to this court on April 28, 2010 for all further proceedings. (Docket Nos. 2, 15, 16, 33.) On May 18, 2010, Jamerson appeared at a scheduling conference before this court with counsel. (Docket No. 24.) Counsel filed a notice of appearance the following day. (Docket No. 23.) At this hearing, the court denied as premature a motion for summary judgment previously filed by Jamerson. (Docket No. 24.) The court granted the plaintiff the opportunity to amend her complaint, which she did on June 18, 2010. (Docket No. 26.) Following a period for discovery, the defendants filed the present motion for summary judgment. (Docket No. 44.) The plaintiff has responded and the caption of this filing indicates it is also a cross-motion for partial summary judgment. (Docket No. 53.) However, this filing was not docketed as a motion since it is only a brief in opposition. The only relief it seeks is to defeat the defendant's motion. The defendants have replied to the plaintiff's response. (Docket No. 59). The pleadings on the defendants' motion for summary judgment are closed and the matter is ready for resolution.

**II. SUMMARY JUDGMENT STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). Material facts are those facts which, under the governing substantive law, might affect the outcome

of the suit. Anderson, 477 U.S. at 248. A dispute of such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Id.

The movant bears the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970); see also Celotex Corp., 477 U.S. at 323. The moving party satisfies its burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson, 477 U.S. at 255; Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988); Spring v. Sheboygan Area School Dist., 865 F.2d 883, 886 (7th Cir. 1989). Further, "on summary judgment, a court can neither make a credibility determination nor choose between competing interests." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993).

If the moving party meets its burden, the nonmoving party then has the burden to present specific facts showing that there is a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**III. ANALYSIS**

The Fourteenth Amendment prohibits a state from depriving any person of property without due process of law. For the purposes of summary judgment, the defendants do not dispute that Jamerson possessed a property interest in her daycare license. (Docket No. 45 at 10); see also Maldonado v. Racine County, 2010 U.S. Dist. LEXIS 35833 (E.D. Wis. Apr. 12, 2010) (holding that daycare operator's complaint sufficiently alleged a property interest in "certification"). Thus, the question is whether Jamerson received due process when her license was suspended and eventually revoked.

A due process claim such as that presented by Jamerson generally has two intertwined aspects. First, there is the adequacy of the procedures utilized to protect the plaintiff's property

interest. Second, there is the promptness with which the plaintiff was afforded those procedural protections. Proof that either the procedures utilized failed to satisfy constitutional minimums or that there was an inappropriate delay in the plaintiff's access to those procedural rights will result in a finding that the plaintiff's due process rights were violated.

"[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands." Gilbert v. Homar, 520 U.S. 924, 930 (1997) (internal quotation marks and citations omitted). In determining the bounds of the constitution's due process guarantee, courts must generally balance three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." Id. at 931-32 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). These factors apply to both questions of the procedures afforded and the timeliness of those procedural protections. Federal Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 242 (1988).

The plaintiff's present claim has multiple facets. Initially, there is the question of whether the plaintiff's property interest in her daycare license was denied without due process when the license was summarily suspended and her daycare remained closed for 10 days before being afforded a hearing before an ALJ. There is then the question of the sufficiency of this preliminary hearing before the ALJ. Following the preliminary hearing, Jamerson's license remained suspended until the Department formally revoked her license. Jamerson appealed this revocation but she does not contend in her brief that the resolution of this appeal was procedurally deficient or unreasonably delayed.

### A. Promptness of Preliminary Hearing

The Department of Children and Families' regulations outline the procedures for the summary suspension of a childcare license.

> [T]he department shall summarily suspend a license and close a group child care center when the department finds that the public health, safety or welfare requires emergency action and incorporates a finding to that effect into its order. A finding of a requirement for summary suspension of the license may be based on any of the following:
>
> * * *
>
> > 3. The licensee, an employee, a volunteer or any other person in regular contact with the children in care has been convicted of a felony, misdemeanor or other offense that substantially relates to the care of children or activities of the center or has a pending charge that substantially relates to the care of children or activities of the center.
>
> * * *
>
> > 5. The licensee or a person under the supervision of the license has committed an action or has created a condition relating to the operation or maintenance of the child care center that directly threatens the health, safety or welfare of any child under the care of the licensee.
>
> (b) An order summarily suspending a license and closing a group child care center may be a verbal order by a licensing representative of the department. Within 72 hours after the order takes effect, the department shall either permit the reopening of the center or proceed under sub. (7) or (8) to revoke the license. A preliminary hearing shall be conducted by the department of administration's division of hearings and appeals, within 10 working days after the date of the initial order to close, on the issue of whether the license shall remain suspended during revocation proceedings.

DCF § 251.11(9).

The Department did not permit the reopening of Childrens Fantasy nor proceed to revoke Jamerson's license within 72 hours after the summary suspension. Rather, concurrent with its summary suspension, the Department notified Jamerson that it *intended* to revoke her license at some future date. A Notice of Intent to Initiate Revocation Proceedings appears to be a procedure devised by the Department for instances when it is unable to complete its investigation within the 72 hours allotted for under § 251.11(9). (See Docket No. 47-2 at 8-9.) The result is to place

8

licensees like Jamerson into a legal limbo. While Jamerson could have appealed a Notice of Revocation, see DCF § 251.11(10), there is no statutory or regulatory provision permitting the appeal of the merits of a Notice of Intent to Initiate Revocation Proceedings.

However, Jamerson was not wholly without redress. It is undisputed Jamerson was afforded a "preliminary hearing" before an ALJ in accordance with DCF § 251.11(9)(b) on December 21, 2009. Two days later, the ALJ issued his written decision. Thus, it was not until the tenth day of the suspension that Jamerson was able to respond to the Department's allegations at a hearing before an ALJ. In order to determine whether this 10-day delay was reasonable, the court must first consider Jamerson's interest in balance with the interest of the government.

The court notes that Jamerson does not explicitly contend in her brief that this 10-day delay was improper. Rather, Jamerson's arguments focus largely upon what she perceives as a constitutionally deficient process whereby following a preliminary hearing the Department could theoretically keep a daycare closed indefinitely while it investigated whether to revoke the license. As such, any arguments not raised by Jamerson have been waived. See Laborers' Int'l Union v. Caruso, 197 F.3d 1195, 1197 (7th Cir. 1999); In re Sulfuric Acid Antitrust Litig., 2010 U.S. Dist. LEXIS 101054, 83 (N.D. Ill. Sept. 24, 2010). Although the plaintiff seemingly concedes that this 10-day delay was proper, the court nonetheless concludes that it is most prudent to explicitly address this period of delay.

The summary suspension of Jamerson's license resulted in the shuttering of her daycare and thus denied her the ability to make her livelihood in the manner she had for the past roughly decade-and-a-half. Although the denial of the ability to operate a business and to earn a living is generally regarded as a substantial interest, see, e.g., Baer v. Wauwatosa, 716 F.2d 1117, 1123 (7th Cir. 1983), when a deprivation of property is for a short period of time, as might occur when an employee is summarily suspended pending the resolution of a full and prompt hearing, the Court

has considered the resulting lost income a "relatively insubstantial" deprivation, Gilbert, 520 U.S. at 932.

Due process case law regarding government employees is analogically helpful in the analysis of Jamerson's case, but in considering the nature of Jameron's interest it is important to note that Jamerson's status as a private business owner is distinct from an ordinary government employee. When Jamerson's business was effectively shuttered as a result of the summary suspension of her license, like a summarily suspended government worker, she lost her source of income. But unlike a government worker who might be entitled to back-pay for a period of unpaid suspension should it be later administratively determined that the suspension was improper, see Jones v. City of Gary, 57 F.3d 1435, 1444 (7th Cir. 1995) ("[T]he harm to the private interests caused by a delay is minimized by the ability of the review board to award back pay to the employee and reinstate him to his previous rank if the board deems that the employee has been wrongly deprived of his or her property interest."), when a business such as a daycare is forced to close, there is no opportunity to later earn that income.

Moreover, a closure for any period of time might be particularly damaging to a business such as a daycare because the business is an essential part of the customer's daily life and a premium is placed upon stable and reliable care. A parent forced to find a new childcare provider during a daycare's temporary suspension may stay with that new childcare provider rather than again upsetting a new routine to return to the former provider should it resume operations. (See Docket No. 53 at 18-19.) Thus, in considering the interest affected, it is important to consider that a suspension of a daycare's license will result in not only the loss of income during the period of suspension but its impact may persist long after the end of the suspension. Cf. Mathews, 424 U.S. at 341 ("[T]he degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking process.")

On the government's side of the balance, there is no doubt that the allegations involving Childrens Fantasy were exceptionally serious. Based upon information from law enforcement, reasonable inferences could be drawn that drugs were being sold out of the center, by workers of the center, and while children were present and in the care of those workers. These are grievous concerns for an agency tasked with ensuring the safety of children in daycares.

Due process does not require that a person always be afforded the opportunity to be heard before deprived of property. "[The Supreme] Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." Gilbert, 520 U.S. at 930. (internal quotation marks and citations omitted). In the context of an employee charged with a crime, the Court stated, "An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." Id. at 931 (quoting Mallen, 486 U.S. at 240). The need to act quickly and without prior notice is particularly strong in instances involving the state's obligation to protect children. See, e.g., Hollingsworth v. Hill, 110 F.3d 733, 739 (10th Cir. 1997) (citing cases).

In light of the exceptionally strong government interest in ensuring the safety and security of children in the care of daycares within the state, the procedures utilized prior to the summary suspension of the license, and the circumstances of this case, the court has no difficulty concluding that a hearing within 10 days was sufficiently prompt. The evidence demonstrates that the summary suspension decision was not a matter trusted to the haphazard discretion of a low-level government employee. Rather, it was the result of a deliberative process involving multiple employees and supervisors of the Department. (See, e.g., Docket No. 60 at ¶25.) The Department reviewed a police report and court records related to the charges against Ashford, and it confirmed that the court found

11

probable cause to believe Ashford committed the crime alleged and bound Ashford over for trial. (Docket No. 60 at ¶¶22-23.) The Department obtained additional information from the detective involved in the investigation of Ashford, (Docket No. 60 at ¶31), and informed Jamerson of its investigation, (Docket No. 60 at ¶26). All these steps served to ensure that basis for the summary suspension was not mistaken.

Moreover, although any suspension of a daycare's license may have a significant impact for the business owner, in the scope of analogous due process jurisprudence, a 10-day summary suspension is relatively short. For example, in the case of a bank president summarily suspended after having been indicted for making false statements, the Court concluded that a 90-day delay before a hearing would not offend due process. Mallen, 486 U.S. at 243. It noted, "[A] suspended bank officer has an interest in seeing that a decision concerning his or her continued suspension is not made with excessive haste." Id.

### B. Sufficiency of Summary Suspension Procedures

Having concluded that a delay until December 21, 2009 for a preliminary hearing did not offend due process, the question now becomes whether that hearing was sufficient to ensure that Jamerson's license was not suspended without due process.

A preliminary hearing does not address the merits of the underlying claim. (Docket No. 47-2 at 2, 9-10.) Rather, a preliminary hearing is limited to the question of whether a center should remain open during the investigative and appeal process. (Docket No. 47-2 at 2, 9-10.) The ALJ concluded that although Jamerson had terminated her sister, it was necessary to keep Childrens Fantasy closed in order to permit the department to complete a thorough investigation. (Docket No. 49-8 at 3-4.) However, the ALJ noted, "It is very concerning that DCF has not yet, as required by law, either permitted Children's [sic] Fantasy to reopen or revoked petitioner's license. [The Department] should immediately comply with the law in this regard." (Docket No. 49-8 at 4.)

This court shares the concerns of the ALJ. The court has not identified any formal basis for the Department's procedure of effectively extending a summary suspension by saying it will, at some undefined point in the future, revoke a license. In the court's view, the regulations are clear; the Department has 72 hours following a summary suspension to make a decision as to how to proceed. If it does not reinstate the license, it must revoke the license, thereby triggering the right to appeal, and its related time limits, under DCF § 251.11(10).

Notwithstanding, the fact that the Department's use of a Notice of Intent to Initiate Revocation Proceedings to extend a summary suspension beyond the permitted 72 hours is not explicitly authorized by statute or regulation does not, by itself, amount to a denial of due process. Garcia v. Kankakee County Hous. Auth., 279 F.3d 532, 535 (7th Cir. 2002) (citing Archie v. Racine, 847 F.2d 1211, 1215-18 (7th Cir. 1988) (en banc)).

This is because Jamerson was given a preliminary hearing. Such preliminary hearings, i.e. a hearing before a final decision on revocation or termination is made, need not be elaborate. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46 (1985). In the context of a public employee suspended while facing termination, the Court stated, "[T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions -- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. Thus, the Court held that all due process requires is that the individual receive notice of what is alleged and be given an opportunity to respond. Id. at 546.

The preliminary hearing afforded Jamerson did precisely this. It provided an initial check against a mistaken decision and considered whether there were reasonable grounds to believe that the daycare should remain closed while the Department conducted its investigation. Jamerson was informed of the allegations against her and afforded the opportunity to respond.

13

Even though it was not until the hearing that Jamerson was informed of the allegation that another Childrens Fantasy employee may have been acting as a lookout during the drug transaction, the lack of advanced notice does not offend due process. Advanced written notice may be preferable but in the context of a pre-termination hearing, oral notice at a hearing is sufficient to satisfy due process. Panozzo v. Rhoads, 905 F.2d 135, 139 (7th Cir. 1990) (citing Riggins v. Board of Regents of the University of Nebraska, 790 F.2d 707 (8th Cir. 1986) (oral notice received at hearing); Kelly v. Smith, 764 F.2d 1412, 1414 (11th Cir. 1985) (same); Brasslett v. Cota, 761 F.2d 827, 836 (1st Cir. 1985) (same).

Ideally, an individual facing the suspension of a business license should be afforded an opportunity to review the evidence against her prior to the hearing. However, the fact that the Department relied upon information contained in a police report that it would not provide to Jamerson or even the ALJ at the pre-revocation hearing does not violate due process. As previously noted, the essential requirements of due process at this pre-revocation stage are notice and the opportunity to respond. This was not a licensee placed in a Kafka-esque setting and asked to defend herself against secret evidence. See Brock v. Roadway Express, Inc., 481 U.S. 252, 265 (1987) (finding due process violation when party requested and was denied any access to the information relied upon for the administrative decision). Rather, Jamerson's access to the evidence was equal to that of the ALJ; Jamerson was presented with the allegations and afforded an appropriate opportunity to respond.

Beyond the constitutional minimums of notice and the opportunity to respond, it is notable that this preliminary hearing also afforded Jamerson the opportunity to cross-examine her accuser under oath. (Docket No. 56-1 at 8.) Moreover, if she was dissatisfied with the result, Jamerson was entitled to request a new hearing or to appeal to Milwaukee County Circuit Court. (Docket No. 49-8 at 4.) Jamerson chose not to avail herself any of these alternative procedures. "[A] state cannot be

held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them. Because the procedural protections existed, the state cannot be accused of withholding them in a section 1983 suit." Leavell v. Ill. Dep't of Natural Res., 600 F.3d 798, 807 (7th Cir. 2010) (quoting Dusanek v. Hannon, 677 F.2d 538, 542-43 (7th Cir. 1982)).

Based upon the substantial procedural rights afforded Jamerson in this preliminary hearing, the court has no difficulty concluding that this hearing satisfied constitutional minimums for due process at a pre-termination or pre-revocation hearing.

### C. Delay in Issuance of Notice of Revocation

Following the preliminary hearing, it was not until January 20, 2010 that the Department formally revoked Jamerson's license. Jamerson contends that after the preliminary hearing, the Department "waited weeks, doing virtually no follow-up investigation and uncovering no additional evidence against the employees of Childrens Fantasy or Ms. Jamerson." (Docket No. 53 at 17.) The only basis for revocation provided in the revocation notice that was not included in the suspension notice was the fact that in light of the enactment of 2009 Wis. Act 76 on November 13, 2009, (Docket No. 47-3), Jamerson was barred from holding a license as of February 1, 2010 due to her prior felony conviction. (Docket No. 49-10 at 2-3.)

Jamerson notes that despite the Department's contentions that it was investigating whether other employees of Childrens Fantasy were involved in drug dealing, no additional evidence was ever uncovered. (See Docket No. 60 at ¶¶43, 129.) Because no additional bases for revocation were uncovered, Jamerson contends the Department must not have been investigating and instead was delaying issuing a notice of revocation to prolong the suspension. Moreover, Jamerson points out that the "Notice of Intent to Revoke" did not impose any time limits upon the Department;

theoretically, the Department could purport to investigate Childrens Fantasy indefinitely while the daycare remained closed pursuant to the summary suspension.

Despite the apparent absence of statutes, rules, or even guidelines indicating how long a daycare may remain closed pursuant to a summary suspension while a Notice of Intent to Revoke is pending, in this case, such alleged deficiencies do not constitute a denial of due process. Cf. Loudermill, 470 U.S. at 547 fn. 11 (discussing non-mandatory 30 day deadline for hearing and the absence of any deadline for a decision on that appeal). Rather, "[t]he Due Process Clause requires provision of a hearing 'at a meaningful time.'" Id. at 547. (citing Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

First, although hypothetical scenarios may be interesting, Jamerson's complaint does not include a facial challenge to the statutes, rules, or Department policies, and therefore the court must constrain its analysis to what the facts actually are, not what they could have been. Turning to the specific facts, Jamerson's license was not indefinitely summarily suspended while the Department continued its investigation. Rather, Jamerson's license was suspended for 9 days from December 12, 2009 until the hearing on December 21, 2009, 2 additional days until the ALJ's decision on December 23, 2009, 28 more days until the Department's revocation on January 20, 2010, and finally, 127 additional days until the ALJ issued a decision dismissing Jamerson's appeal of her revocation on May 27, 2010, which became final when adopted by the Department 27 days later on June 23, 2010. In total, Childrens Fantasy was closed for approximately six-and-a-half months (193 days) until the Department issued its final decision.

With respect to Jamerson's contention that the absence of additional grounds in the Notice of Revocation is proof that the Department failed to conduct any further investigation during this period and was simply extending the closure of Childrens Fantasy, the court finds this contention meritless. Simply because additional inculpatory evidence of other Childrens Fantasy employees

16

involved in drug dealing was not uncovered before the Department issued the notice of revocation does not mean that the Department was not conducting an investigation during this period. A defendant testified that such an investigation was occurring during this period, (Docket No. 55-2 at 2; see also Docket Nos. 49 at ¶¶25, 27, 32-33, 40; 52 at ¶¶14, 16, 18-19; 60 at ¶¶51, 53, 67), and Jamerson points to no evidence to the contrary. In fact, although the scope of the investigation is not clear, Jamerson concedes that an investigation occurred, albeit with the caveat that in her view the investigation was minimal. (Docket No. 53 at 17.)

It is possible that the Department could have issued its formal notice of revocation sooner, especially in light of the fact that the notice itself states, "This notice may be amended at the conclusion of any other investigation(s) being conducted by the Department and/or any other agency." (Docket No. 49-10 at 3.) In other words, the Department was not precluded from issuing a Notice of Revocation concurrent with its summary suspension and then amending the notice if its investigation revealed further reasons to support revocation.

However, due process does not require that a state actor take an action immediately upon recognizing there is a basis to do so. But conversely, "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." Loudermill, 470 U.S. at 547 (citing Barry v. Barchi, 443 U.S. 55, 66 (1979)). The question before the court is whether the delay in this case passed that tipping point to unconstitutionality.

Under the circumstances of this case, the court finds no reason to conclude that any delays in the procedures utilized violated Jamerson's right to due process. Certainly, the limited preliminary hearing Jamerson received was insufficient to support a permanent revocation and therefore, at some point it was incumbent upon the Department to initiate the formal process of revoking a license. But the fairly substantial procedural rights afforded Jamerson at this preliminary hearing,

17

including, notably, the right to request a new hearing or to appeal the ALJ's decision to circuit court, were sufficient to justify the closure of Childrens Fantasy through the investigative phase.

The issuance of the notice of revocation is the point in the factual chronology of this case where the plaintiff ends her opposition to the defendants' motion for summary judgment. (Docket No. 53 at 16-19.) However, this is not where the allegations contained in her complaint end. Jamerson contends that "Defendants, acting under color of law, impermissibly delayed Plaintiff's revocation hearing causing the continued deprivation of Plaintiff's protected liberty and property interests . . . ." (Docket No. 26 at ¶44.) The plaintiff is thus alleging that the delay in obtaining a post-revocation hearing also violated due process.

The Department's regulations provide that an appeal must be filed within 10 days of a revocation. DCF § 251.11(10)(a). A hearing must then generally be conducted within 30 days, unless the license holder agrees to extend the time or some other exception applies. DCF § 251.11(10)(b). A decision shall then be issued within 30 days, unless both parties agree to a later date. DCF § 251.11(10)(c).

In the present case, a hearing was scheduled for June 8, 2010, more than four months after Jamerson's license was revoked and her appeal filed. This hearing never occurred because the Department filed a motion to dismiss on May 18, 2010, which the ALJ granted on May 27, 2010. (Docket No. 48-8.) The ALJ's decision was then adopted as a final decision of the Department on June 23, 2010. (Docket No. 48-8.) If there is an explanation as to why a hearing on Jamerson's appeal did not occur within the 30 days required under DCF § 351.11(b), it is not contained in the record. For example, no evidence has been presented that Jamerson consented to this delay, or that any of the other exceptions to the 30 day deadline under DCF § 251.11(10)(b) applied. However, by failing to present any argument on this point in opposition to the defendants' motion for summary judgment, the court concludes that Jamerson has waived any such argument. See Caruso, 197 F.3d

at 1197; In re Sulfuric Acid Antitrust Litig., 2010 U.S. Dist. LEXIS 101054, 83 (N.D. Ill. Sept. 24, 2010).

Even if this court was willing to look past her waiver, the court would find that the delay would not result in any due process violation. Again, although the Department appears to have violated its own rules, this alone does not amount to a violation of due process. Garcia, 279 F.3d at 535 (citing Archie, 847 F.2d at 1215-18). In consideration of the competing interests of the government and the licensee discussed above, the court finds that the preliminary hearing afforded to Jamerson was sufficient to support the closure of her daycare through this period while the appeal of her revocation was pending.

## IV. CONCLUSION

Having concluded that Jamerson was afforded all the process she was due, it is unnecessary for the court to consider the alternative arguments presented by the defendants in support of summary judgment, (see Docket No. 45 at 21-29). The preliminary hearing Jamerson received was sufficiently prompt and satisfied constitutional minimums by providing Jamerson a meaningful opportunity to respond to the allegations that formed the basis for the Department's decision to suspend Jamerson's license. The substantial procedural protections afforded Jamerson at this preliminary hearing were sufficient to support the closure of Childrens Fantasy until the Department formally revoked her license and through the disposition of Jamerson's appeal of this revocation. Therefore the court shall grant the defendants' motion for summary judgment.

**IT IS ORDERED** that the defendants' motion for summary judgment, (Docket No. 44), is **granted**, and the plaintiff's complaint and this case is **dismissed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 17th day of February. 2011.

                                                s/AARON E. GOODSTEIN
                                                U.S. Magistrate Judge